In the INTEREST OF T.R.B., alleged to be delinquent child under 18 years: T.R.B., Appellant-Cross-Petitioner,

v.

STATE of Wisconsin, Respondent-Petitioner.†

Supreme Court

*No. 81–1052. Argued September 8, 1982.—Decided November 2, 1982.*

(Also reported in 325 N.W.2d 329.)

---

† Motion for reconsideration denied, without costs, on December 15, 1982. BEILFUSS, C.J., took no part.

For the respondent-petitioner the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the appellant-cross-petitioner there was a brief by *Gerald L. LaBarge, Thomas J. St. Ville* and *Jastroch & LaBarge, S.C.,* Waukesha, and oral argument by *Bradley J. Bloch,* Milwaukee.

SHIRLEY S. ABRAHAMSON, J. This is a review of a decision of the court of appeals[1] reversing an order of the Circuit Court for Washington County, Richard T. Becker, circuit judge. The circuit court waived juvenile court jurisdiction[2] and referred the matter to the district attorney to institute appropriate criminal proceedings. Because the district attorney had not presented testimony and the juvenile court had not heard testimony at the waiver hearing, the court of appeals reversed the order of waiver and remanded the case to the juvenile court to hold a hearing on the waiver issue. We affirm the decision of the court of appeals.

We note as a preliminary matter that the case is not moot, as T.R.B. argues. Even though T.R.B. reached the age of 18 on January 30, 1982, he is not beyond the juvenile court's jurisdiction. Sec. 48.12(2), Stats. 1979–80, provides that if a court proceeding has been commenced under sec. 48.12 before a child becomes 18 years

[1] *In Interest of T.R.B.,* 105 Wis. 2d 405, 314 N.W.2d 850 (Ct. App. 1981).

[2] The juvenile court is the circuit court assigned to exercise jurisdiction under the Children's Code. Sec. 48.02 Stats. 1979–80.

of age, but the child becomes 18 years of age before admitting the facts of the petition at the plea hearing or if the child denies the facts before an adjudication, the court retains jurisdiction over the case to waive its jurisdiction.

The facts surrounding the waiver hearing are not in dispute. Pursuant to sec. 48.18(1) and (2), Stats. 1979–80,[3] the district attorney initiated proceedings to waive juvenile court jurisdiction by filing two petitions: A petition drafted under sec. 48.255 alleging delinquency and a petition for waiver.

The delinquency petition alleges that T.R.B. had operated a motor vehicle without the owner's consent, contrary to secs. 943.23(1) and 939.05, Stats. 1979–80. The petition recites the facts forming the basis of the district attorney's allegations and the names of those who gave him his information. Sec. 48.255, Stats. 1979–80, which governs the form and content of the petition initiating delinquency proceedings mandates that the delinquency petition set forth "with specificity" facts "sufficient to establish probable cause that an offense has been committed and that the child named in the petition committed the offense." Sec. 48.255(1)(d), Stats. 1979–80.

---

[3] "48.18 **Jurisdiction for criminal proceedings for children 16 or older; waiver hearing.** (1) If a child is alleged to have violated a state criminal law on or after his or her 16th birthday, the child or district attorney may apply to the court to waive its jurisdiction under this chapter. The judge may initiate a petition for waiver if the judge disqualifies himself or herself from any future proceedings on the case.

"(2) The waiver hearing shall be brought on by filing a petition alleging delinquency drafted under s. 48.255 and a petition for waiver of jurisdiction which shall contain a brief statement of the facts supporting the request for waiver. The petition for waiver of jurisdiction shall be filed prior to the plea hearing."

The district attorney's petition for waiver of juvenile court jurisdiction contains "a brief statement of the fact supporting the request for waiver," as required by sec. 48.18(2), Stats. 1979–80. The waiver petition briefly sets forth TRB's history before the juvenile court, namely, that the juvenile court had found him delinquent in 1977, and that T.R.B. had been involved in a series of incidents since the 1977 delinquency determination, and that although T.R.B. had "extensive prior treatment by the juvenile justice system," the treatment had had "little success."

A waiver hearing was held at which the following persons' appearances were noted in the record: an assistant district attorney, a person from the Wisconsin Department of Health and Social Services, two people from the sheriff's department, the parents of T.R.B., T.R.B., and T.R.B.'s attorney.

At the commencement of the waiver hearing, T.R.B.'s attorney announced that "we are not going to argue against the waiver."[4] Although the juvenile may file a petition to waive jurisdiction, sec. 48.18(1), T.R.B. had not filed such a petition.[5] T.R.B.'s attorney did not stipulate to any facts contained in the petitions that the district attorney filed.

After stating that "we" would not contest waiver, T.R.B.'s attorney asked the juvenile court how it wished

---

[4] Although there is no specific statute authorizing a juvenile or the juvenile's attorney to decline to contest the state's petition for waiver, the parties, the court of appeals, and this court have proceeded on the assumption that the juvenile is not required to contest the waiver. While the juvenile may relinquish his or her right to contest the petitions or the testimony and the evidence offered at the waiver hearing, neither the juvenile nor the district attorney nor the juvenile court can dispense with the requirement that a hearing be held on the waiver issue.

[5] Sec. 48.18(1), Stats. 1979–80, provides that the district attorney, the child or the judge may petition to waive jurisdiction.

to proceed. The juvenile court stated that the appropriate procedure was for it to review the petitions to determine prosecutive merit and to hear a statement by the state regarding the other factors relating to waiver. After stating that it had reviewed both petitions, the juvenile court concluded that the delinquency petition set forth sufficient facts for the court to find "prosecutive merit." The juvenile court then asked the district attorney if he wished to place anything on the record. Even though representatives of the Wisconsin Department of Health and Social Services and the sheriff's office were present in the courtroom, the district attorney did not call any witnesses to testify, and the court did not ask for testimony. Instead, the district attorney made a brief statement to the effect that the waiver petition showed that the juvenile system had not succeeded in helping T.R.B. to modify his conduct and that waiver of juvenile court jurisdiction would be in the juvenile's best interest. Although given the opportunity to speak, T.R.B.'s attorney declined to make a statement. T.R.B. remained silent throughout the hearing.

After making findings regarding the criteria relevant for waiver, including T.R.B.'s age, the nature of the alleged offense, T.R.B.'s record of prior offenses, and T.R.B.'s history in juvenile facilities, the juvenile court ordered that its jurisdiction be waived.[6]

Both on appeal to the court of appeals and on review in this court the parties raise three issues: (1) whether sec. 48.18(4), Stats. 1979–80, requires the juvenile court to consider evidence other than the delinquency and waiver petitions before it can find "prosecutive merit";

---

[6] Although the record on appeal includes records of proceedings before the juvenile court from 1977 to 1980 relating to T.R.B., it is not clear whether the juvenile court considered these records in making its determination. Neither the district attorney nor T.R.B.'s attorney made reference to these records.

(2) whether the district attorney must present testimony at the waiver hearing when the district attorney petitions for waiver and the juvenile's attorney does not contest waiver; and (3) whether the juvenile court must determine on the record that the juvenile has personally made an informed and voluntary decision not to contest waiver of juvenile court jurisdiction.[7]

The court of appeals held that the juvenile court may find prosecutive merit on the basis of the petitions alone[8] and that sec. 48.18(4) does not require testimony on the issue of prosecutive merit when the juvenile does not contest the waiver. The court of appeals also held, however, that even when the juvenile's counsel does not contest waiver, sec. 48.18(5), Stats. 1979–80, requires the district attorney to present testimony on the issue of whether the juvenile court should waive its jurisdiction. The court of appeals did not decide whether the record must show that the juvenile had personally made an informed and voluntary decision not to contest the waiver. We shall consider each issue in turn.

## I.

We begin with the issue of the basis on which a finding of prosecutive merit must be made. The term "prosecutive merit" appears three times in sec. 48.18, Stats. 1979–80. First, sec. 48.18(4), Stats. 1979–80, provides that "the judge shall determine whether the matter has prosecutive merit before proceeding to determine if it should waive its jurisdiction." Second, sec. 48.18(5)

---

[7] T.R.B.'s counsel at the waiver hearing is not representing him on appeal.

[8] Although the juvenile court had before it both the waiver and delinquency petitions, the juvenile court made its finding of prosecutive merit on the basis of the delinquency petition. We conclude that the juvenile court may look at both petitions, if necessary, to determine prosecutive merit.

provides that "if prosecutive merit is found," the juvenile court shall consider relevant testimony and other relevant evidence to decide whether to waive jurisdiction. Finally, one of the criteria set forth in sec. 48.18(5)(b) on which the waiver decision is to be based is prosecutive merit. Sec. 48.18(5)(b) provides:

"(5) If *prosecutive merit* is found, the judge . . . shall base its decision whether to waive jurisdiction on the following criteria:
"...

"(b) The type and seriousness of the offense, including whether it was against persons or property, the extent to which it was committed in a violent, aggressive, premeditated or wilful manner, and *its prosecutive merit.*" Sec. 48.18(5)(b), Stats. 1979–80. (Emphasis added.)

Sec. 48.18(4) and sec. 48.18(5), when read with sec. 48.18(1), Stats. 1979–80, set forth a two-stage waiver hearing. The first stage of the waiver hearing, sec. 48.18(1) and (4), consists of the juvenile court's determination that the "jurisdictional factors" exist that would allow it to proceed to consider the waiver criteria: Whether the juvenile was 16 years of age or over on the date of the alleged offense, sec. 48.18(1),[9] and whether the state's allegation that the juvenile has violated a state criminal law has prosecutive merit, sec. 48.18(4). In the second stage of the waiver hearing, sec. 48.18(5), the juvenile court determines whether to waive jurisdiction.[10] The determination of prosecutive

[9] Sec. 48.18(1), Stats. 1979–80, provides that "if a child is alleged to have violated a state criminal law on or after his or her 16th birthday, the . . . district attorney may apply to the court to waive its jurisdiction."

[10] Neither party raises, and we do not consider, the significance of the criterion of prosecutive merit in sec. 48.18(5)(b). The legislature may have intended to require the juvenile court to consider prosecutive merit twice. On the other hand, the reference

merit under sec. 48.18(4), although separate from the determination of waiver under sec. 48.18(5), is part of the waiver hearing. As the court of appeals noted in *In Interest of D.E.D.*, 101 Wis. 2d 193, 206, 304 N.W.2d 133 (Ct. App. 1980), "[T]he statute provides for a single hearing with a sequential order of proof before the same judge."

T.R.B. raises two questions about "prosecutive merit" as that phrase is used in sec. 48.18(4), Stats. 1979–80: The meaning of the phrase prosecutive merit and the manner in which the district attorney may demonstrate prosecutive merit.

Neither the legislature nor this court has defined prosecutive merit.[11] Before the adoption of sec. 48.18 (4) and (5), this court first used the term "prosecutive merit" in *Mikulovsky v. State*, 54 Wis. 2d 699, 705, 196 N.W.2d 738 (1972), a juvenile waiver case. The phrase

to prosecutive merit in sec. 48.18(5)(b) may have been a product of "legislative oversight," as one student commentator concluded without full discussion or analysis. That commentator concluded that the juvenile court's consideration of prosecutive merit in both stages of the waiver hearing would be unfair to the juvenile, reasoning as follows:

"Otherwise, this factor would be counted twice against the juvenile and would violate the appearance of fairness. Presumably, the purpose of determining prosecutive merit is similar to that of a determination of probable cause. Once a determination is made that the matter does have prosecutive merit, that factor itself should not have additional relevance to the question of whether or not a youth should be waived into criminal court." Comment, *Wisconsin's New Juvenile Waiver Statute: When Should We Wave Goodbye to Juvenile Court Protections*, 1979 Wis. L. Rev. 190, 212–13.

[11] Neither sec. 48.18(4) nor sec. 48.18(5) defines the phrase "prosecutive merit" or specifies the manner in which the showing of prosecutive merit may be made. It has been suggested that the legislature define "prosecutive merit," but the legislature has apparently declined to do so. *See* Drafting Files, 1977 Assembly Bill 874; 1979 Assembly Bill 1168.

prosecutive merit was borrowed from the Policy Memorandum of the Juvenile Court of the District of Columbia appended to *Kent v. United States,* 383 U.S. 541, 566–68 (1966), where the phrase first appears.[12] In *Mikulovsky,* the juvenile court applied the "Kent criteria" and heard the testimony of two police officers on the evidentiary basis of the charges against the juvenile. This court reaffirmed its approval of the Kent criteria in *In re Interest of FRW,* 61 Wis. 2d 193, 205, 212 N.W.2d 130 (1973), and referred to prosecutive merit in *In Interest of D.H.,* 76 Wis. 2d 286, 305, 306, 308, 251 N.W.2d 196 (1977). In none of these Wisconsin cases did the court define prosecutive merit or comment on whether testimony was required to demonstrate prosecutive merit.

Although prosecutive merit is not defined in the Wisconsin Statutes or cases, it is generally accepted that the determination of "prosecutive merit" is analogous to the determination of probable cause in a criminal proceeding and that a finding of prosecutive merit must be based on a showing that reasonable grounds exist to believe that the juvenile has committed the violation of state criminal law charged.[13]

---

[12] The *Kent* policy memorandum defines "prosecutive merit" as "whether there is evidence upon which a Grand Jury may be expected to return an indictment. . . ." *Kent v. United States, supra,* 383 U.S. at 567. The briefs in this case do not attempt to relate the federal grand jury law as to probable cause to the Wisconsin law for determining probable cause. When a defendant is named in an indictment by a Wisconsin grand jury, a judge is required to issue a warrant or a summons, sec. 968.06, Stats. 1979–80, but a defendant is entitled to a preliminary examination before an indictment is filed, secs. 970.02(1)(c), 971.02(1), Stats. 1979–80.

[13] *See, e.g.,* Youth Policy and Law Center, *Wisconsin Juvenile Court Practice in Delinquency and Status Offense Cases,* sec. 9.11 at 143 (Melli ed. 1978); Institute of Judicial Administration—American Bar Association, *Juvenile Justice Standards: Standards*

The parties agree that prosecutive merit is analogous to probable cause, but disagree as to the "degree" of probable cause required for a determination of prosecutive merit. The state argues that the degree of probable cause required to support a finding of prosecutive merit is similar to the degree of probable cause required to support a criminal complaint. Secs. 968.03, 968.04, Stats. 1979–80. T.R.B. contends that the degree of probable cause required to support a finding of prosecutive merit is more like the degree of probable cause necessary to support a bindover for trial, sec. 970.03, Stats. 1979–80. The degree of probable cause required for a bindover is greater than that required to support a complaint. A probable cause finding is not, however, equivalent to a finding of guilt beyond a reasonable doubt. *State v. Berby,* 81 Wis. 2d 677, 683, 260 N.W.2d 798 (1978); *State v. Beal,* 40 Wis. 2d 607, 613, 162 N.W.2d 640 (1968).[14]

This court has distinguished between these two degrees of probable cause on the basis of the differences between the functions of the probable cause determinations at the complaint and preliminary examination stages. While a probable cause determination at the complaint stage determines whether the state may conduct further inquiry into the alleged crime, *State v.*

---

*Relating to Transfer between Courts* 37 (1980); *Report of the Advisory Committee to the Administrator on Standards for the Administration of Juvenile Justice,* Sept. 30, 1976, at 29–30 (U.S. Department of Justice, Law Enforcement Assistance Administration, National Institute for Juvenile Justice and Delinquency Prevention); *National Bench Book for Juvenile Courts* 18 (Arthur ed. 2d ed. 1979); *In re Anonymous,* 14 Ariz. App. 466, 484 P.2d 235 (1971); *JTP v. State,* 544 P.2d 1270, 1279 (Okla. Ct. App. 1975).

[14] The juvenile court makes a finding of probable cause; it does not make an adjudication that the child violated a criminal statute. *Breed v. Jones,* 421 U.S. 519, 538, n. 18 (1975).

*Olson,* 75 Wis. 2d 575, 583, 250 N.W.2d 12 (1977), a probable cause determination at the preliminary examination stage is a finding by the court that sufficient evidence exists so that the state may compel the defendant to be bound over for criminal trial. Sec. 970.03(7), Stats. 1979–80. The purpose of determining probable cause in the complaint is to ensure that the document provides a reasonable basis for inferring that "a crime had probably been committed and that the defendant named in the complaint was probably the culpable party. . . . The test under Wisconsin law of the sufficiency of the complaint is one of 'minimal adequacy, not in a hypertechnical but in a common sense evaluation, in setting forth the essential facts establishing probable cause.' " *State v. Olson,* 75 Wis. 2d 575, 580, 250 N.W.2d 12 (1977). The purpose of determining probable cause at the preliminary examination is to ensure that the "evidence adduced at the preliminary examination establishes to a reasonable probability that a crime has been committed and that the defendant has probably committed it." *State ex rel. Huser v. Rasmussen,* 84 Wis. 2d 600, 605, 267 N.W.2d 285 (1978), reh. den. 85 Wis. 2d 441, 270 N.W.2d 62. See also *State v. Williams,* 104 Wis. 2d 15, 22–23, 310 N.W.2d 601 (1981), citing *Vigil v. State,* 76 Wis. 2d 133, 141, 250 N.W.2d 378 (1977); *State v. Olson,* 75 Wis. 2d 575, 584, 250 N.W.2d 12 (1977); *Taylor v. State,* 55 Wis. 2d 168, 173, 197 N.W.2d 805 (1971).

In this case the court of appeals appears to have adopted the state's position. Adhering to its decision in *In Interest of D.E.D.,* 101 Wis. 2d 193, 205, 304 N.W.2d 133 (Ct. App. 1981), the court of appeals concluded that the juvenile court should find "prosecutive merit" if there is sufficient evidence to show "that the charges against the juvenile are not merely capricious and that, assuming the juvenile were an adult, further criminal

proceedings would be justified." 105 Wis. 2d at 409. This language mirrors part of the language used in this court's prior decisions to describe the degree of probable cause that the state must show to support a criminal complaint. The D.E.D. language seems to have been taken from *State v. Becker,* 51 Wis. 2d 659, 662–63, 188 N.W. 2d 449 (1971), in which we said:

"The term, 'probable cause,' contemplates the existence of facts and circumstances which would incite an honest belief in a reasonable man, acting under all the circumstances, that the charges made are true. A complaint is sufficient if a fair-minded magistrate could reasonably conclude that the facts alleged justify further criminal proceedings and that the charges are not merely capricious."

We disagree with the approach taken by the court of appeals. We view the determination of prosecutive merit under sec. 48.18(4) as more functionally similar to the determination of probable cause in the preliminary examination than to the determination of probable cause on a challenge to the complaint. Just as the court in the preliminary examination must determine that the state has sufficient evidence to bring a particular defendant to criminal trial, the juvenile court in determining prosecutive merit must determine that the state has sufficient evidence to compel the juvenile to be subjected to a criminal trial.

Furthermore, in light of the legislative policy as to waiver, we cannot justify compelling a child to face adult criminal trial upon a lesser degree of proof than the state would bear in a preliminary examination to bind over an adult for criminal trial. In Wisconsin waiver is the only procedure by which a person between the ages of 16 and 18 may be tried in criminal court. *Gibson v. State,* 47 Wis. 2d 810, 815, 177 N.W.2d 912 (1970). Waiver of juvenile court jurisdiction is a "critically im-

portant" decision that entails depriving the juvenile and the public of the substantial protections the juvenile court system provides to the juvenile accused of committing a crime. *See, Kent v. United States,* 383 U.S. 541, 553, 556–57 (1966). The legislature has mandated that juveniles be retained within the juvenile system unless it is established, by clear and convincing evidence, that it would be contrary to the best interests of the juvenile or of the public for the juvenile court to hear the case, sec. 48.18(6). The higher degree of probable cause comports with the legislative mandate.[15]

While it is clear that the legislature considered economy of judicial time important and did not intend the inquiry under sec. 48.18(5) to be undertaken unless there was sufficient evidence to justify institution of criminal proceedings against the juvenile, *cf.* IJA-ABA, Juvenile Justice Standards, Standards Relating to Transfer Between Courts, 37–38 (1980), we recognize that sec. 48.18(4) and (5) might be interpreted to mandate two different degrees of prosecutive merit analogous to the two different degrees of probable cause: the lower degree under sec. 48.18(4), the jurisdictional inquiry, and the higher degree under sec. 48.18(5), the waiver inquiry. We do not adopt this interpretation because it creates a cumbersome procedure and leads to wasted effort. If the district attorney need meet only the lower degree "complaint" test of probable cause under sec. 48.18(4), the juvenile court might be put to the difficult and time-consuming task of determining waiver at the second stage of the hearing only to determine at the end of its inquiry that it should not waive jurisdiction because the district attorney had not made a showing

---

[15] We recognize that the waiver hearing does not substitute for the preliminary examination in the adult criminal proceeding. In the event of waiver, the juvenile is still entitled to a preliminary examination. Sec. 970.03, Stats. 1979–80.

under the higher degree of probable cause that would justify instituting criminal proceedings against the child for the offense charged.

Accordingly we hold that the juvenile court, before considering the waiver criteria, must satisfy itself that the record establishes to a reasonable probability that the violation of the criminal law alleged has been committed and that the juvenile has probably committed it. This is the degree of probable cause required to bind over an adult for criminal trial.

The next question that we must address is whether the petitions for delinquency and waiver can constitute a sufficient record upon which the juvenile court may base its finding of prosecutive merit when the juvenile's attorney does not contest the issue of prosecutive merit.[16] T.R.B. argues that sec. 48.18(4) requires "something more" than the petitions.

To test T.R.B.'s assertion we look to the language and legislative history of sec. 48.18(4) and to the rules of evidence applicable to the waiver hearing. The language of sec. 48.18(4) does not support T.R.B.'s assertion. Sec. 48.18(4), unlike sec. 48.18(5), does not require the district attorney to present relevant testimony or require the juvenile court to consider relevant testimony and relevant evidence. Nor does the legislative history of sec. 48.18(4) support T.R.B.'s contention that "something more" than the petitions is required. The original draft of sec. 48.18(4) required the juvenile court determining probable cause to "hear any relevant evidence presented by the child and district attorney," but did not require the presentation of evidence. *See* 1977 AB 874, sec. 27.

---

[16] Of course, sec. 48.18(4) cannot be read to preclude the juvenile court from considering testimony or other evidence presented by the district attorney or juvenile in addition to the petitions. See also sec. 48.18(3), Stats. 1979–80.

The rules of evidence applicable to waiver hearings appear to allow the juvenile court to make its determination of prosecutive merit on the basis of the petitions alone if those petitions are adequate. Sec. 48.299(4)(b), Stats. 1979–80, governs the presentation of evidence at the waiver hearing. In this section, the legislature has specifically provided that neither common law nor statutory rules of evidence are binding at a waiver hearing and that the juvenile court shall apply basic rules of relevancy, materiality, and probative value of proof to all questions of fact. Furthermore, the legislature authorizes the admission of hearsay evidence at a waiver hearing if it has demonstrable circumstantial guarantees of trustworthiness. In order to be used as evidence, the petitions must have guarantees of trustworthiness. The allegations of delinquency must be based on the petitioner's personal observations, or if based on other than the petitioner's eyewitness observations, the petitions themselves must establish the reliability of the information on which the petitioner bases his or her belief.

After considering the language of sec. 48.18(4) and sec. 48.18(5), the legislative history of sec. 48.18(4), and the rules of evidence set forth in sec. 48.299(4)(b), Stats. 1979–80, we conclude that if waiver is not contested the legislature did not intend to require the juvenile court to take testimony or to consider evidence, other than the petitions, to determine whether the matter has prosecutive merit under sec. 48.18(4). We emphasize that we do not hold that the juvenile court need never take testimony or consider evidence other than the petitions and may always make a finding of prosecutive merit under sec. 48.18(4) based only on the petitions for delinquency and waiver. We hold only that a finding of prosecutive merit based on the petitions is proper in those cases in which the district attorney does not seek to submit relevant testimony or relevant evidence,

the petitions contain detailed information concerning the juvenile's alleged violation of state criminal law and have demonstrable circumstantial guarantees of trustworthiness, and the issue of prosecutive merit is not contested. We are not presented with, and we do not decide, the question of whether the state must submit relevant testimony or relevant evidence other than the petitions if the issue of prosecutive merit is contested.

## II.

In contrast to its holding that the juvenile court may determine prosecutive merit based on the petitions alone, the court of appeals held that sec. 48.18 (5), Stats. 1979–80, requires the district attorney in an uncontested waiver hearing to present, and the juvenile court to take, testimony and consider relevant evidence regarding waiver. The state argues that the court of appeals misconstrued the statute.

This court has previously considered the question of whether the juvenile court must hold a testimonial or evidentiary hearing at which the prosecution is required to produce evidence to support its petition to waive juvenile jurisdiction. In *State ex rel. TDD v. Racine County Cir. Court*, 91 Wis. 2d 231, 280 N.W.2d 264 (1979), the court concluded that at the waiver hearing the district attorney may rely solely on the petitions to meet the state's burden of establishing by clear and convincing evidence that it would be contrary to the best interest of the child or of the public for the case to remain in juvenile court. *TDD* followed the reasoning of *In re D.H.*, 76 Wis. 2d 286, 251 N.W.2d 196 (1977), in which this court, relying on *Kent v. United States*, 383 U.S. 541 (1966), did not require an evidentiary hearing prior to waiver. In *TDD* the court concluded that sec. 48.18 (5), Stats. 1977, did not require the juvenile court to

hold an evidentiary hearing or the district attorney to produce relevant testimony. This court refused to construe sec. 48.18(5), Stats. 1977, which at the time TDD was before the juvenile court read as follows:

"[48.18] (5)  If prosecutive merit is found, the judge, *after taking relevant testimony and considering other relevant evidence* shall base its decision whether to waive jurisdiction on the following criteria. . . ."

as if it read as follows:

"If prosecutive merit is found, the judge, after taking relevant testimony *which the prosecution must present* and considering other relevant evidence, shall base its decision to waive jurisdiction on the following criteria: . . ." *TDD v. Racine County, supra,* 91 Wis. 2d at 238–39.

Shortly after the *TDD* decision, the legislature amended sec. 48.18(5) to include the words the *TDD* court had refused to read into the statute. Sec. 48.18(5) was amended in 1979 to read as follows:

"If prosecutive merit is found, the judge, after taking relevant testimony *which the district attorney shall present* and considering other relevant evidence, shall base its decision whether to waive jurisdiction on the following criteria: . . ." Sec. 13, ch. 300, Laws of 1979; sec. 48.18(5), Stats. 1979–80.[17]

It is apparent that the legislature disagreed with this court's interpretation of sec. 48.18(5) in *TDD* and wanted to clarify its intent that the waiver hearing be

[17] Sec. 48.18(5) does not precisely incorporate the language suggested by this court in *TDD.* The legislature changed "prosecution" to "district attorney" and changed "must" to "shall." These changes are not significant. The district attorney is the prosecuting arm of the state and the word "shall" is generally used in legislative drafting in Wisconsin to mean mandatory action. Wis. Legis. Ref. Bureau, *Wisconsin Bill Drafting Manual,* p. 12 (1976).

an evidentiary hearing at which the district attorney must present testimony.

The state acknowledges that sec. 48.18(5) appears to require the district attorney to present testimony on the waiver criteria[18] but argues that sec. 48.18(5) is not applicable when the juvenile does not contest waiver. The state contends that the purpose of requiring the district attorney to present testimony is to afford the juvenile who wishes to contest waiver the opportunity to cross-examine those who testify in favor of the waiver. The state argues that the district attorney's presentation of testimony in an uncontested waiver hearing would be a "meaningless formality" when the juvenile court has waiver and delinquency petitions before it which fully state the juvenile's background, alleged violation of the state criminal law and the juvenile's history of unsuccessful efforts at rehabilitation. We disagree with the state's contention, because we think that the state fails to give sufficient consideration to the vital role that the legislature has assigned to the juvenile court in a waiver hearing. The legislature mandated that the juvenile court has exclusive jurisdiction over any child of 12 years of age or older who is alleged to be a delinquent, sec. 48.12(4), Stats. 1979–80, and has required that the juvenile court hold a waiver hearing at which testimony and evidence is presented regardless of who petitions for waiver and regardless of whether a party contests the waiver. The juvenile court must ensure that the child and the public receive the full benefits that the juvenile and the criminal codes provide. The waiver hearing is part of the juvenile court's function of protecting the child and the public. Rather than deferring to the district attorney's or to the juvenile's request to waive the juvenile court's jurisdiction or to either party's

---

[18] The state asserts that it is unclear what the word "testimony" means, that is, whether witnesses must be examined in the courtroom or whether documentary evidence is sufficient.

acquiescence in the other party's request, the juvenile court must independently determine whether waiver is appropriate. The type of evidence presented to the court at the waiver hearing affects the juvenile court's ability to make this independent determination. See *People v. Gooden,* 56 Ill. App. 3d 408, 371 N.E.2d 1089, 1091 (1977).

In the case at bar the district attorney was prepared to present testimony and evidence at the waiver hearing. Persons from the Department of Health and Social Services and from the sheriff's department were present at the waiver hearing, presumably ready and able to testify. The district attorney did not fulfill the obligation imposed upon him by statute to present testimony. We agree with the court of appeals that the case must be remanded for a waiver hearing at which the district attorney is required to present testimony.

### III.

T.R.B. argues on appeal that the waiver of the right to contest the waiver petition constitutes the waiver of a fundamental right and that his attorney could not make the decision not to contest waiver for him. T.R.B. contends that the decision must be made personally by the juvenile, not by his attorney, and that the juvenile court must ascertain on the record that the juvenile personally made an intelligent and voluntary decision not to contest waiver of juvenile court jurisdiction. In the case at bar the juvenile's attorney at the inception of the waiver hearing stated on the record that "we" would not contest the waiver; the juvenile remained silent during the hearing.

This court and other courts have characterized certain rights as fundamental and have held that the law takes particular pains to ensure that the decision to waive

those rights is that of the defendant. *State v. Albright,* 96 Wis. 2d 122, 129–30, 291 N.W.2d 487 (1980). When a defendant attempts to waive fundamental rights, the trial court has a "serious and weighty responsibility" to determine "whether there is an intelligent and competent waiver by the accused" and "it would be fitting and appropriate for that determination to appear on the record." *Johnson v. Zerbst,* 304 U.S. 458, 465 (1937).

Certainly, the juvenile court's waiver of its jurisdiction is a "critically important" decision. *Kent v. U.S.,* 383 U.S. 541, 553 (1966). Waiver exposes the juvenile to severe punishment, including incarceration for a long period beyond the age of majority; waiver exposes the juvenile to public proceedings and to a criminal record; conviction of a crime may subject the juvenile to loss of rights. Were it the case here, as in other states, that the juvenile may unilaterally choose to waive juvenile court's jurisdiction, we would agree with the IJA-ABA Joint Commission on Juvenile Justice Standards conclusion that the court should determine that the juvenile's decision to be tried as an adult is a decision that should be made by the juvenile personally after consultation with counsel rather than by counsel after consultation with the juvenile. IJA-ABA Juvenile Justice Standards, Standards Relating to Pretrial Court Proceedings, sec. 6.2, 105–106 (1980). *Cf. In Matter of H.H., Jr.,* 580 P.2d 1006, 1007–8 (Okla. Ct. App. 1978).

In Wisconsin, however, the juvenile has no power to decide whether to be tried as an adult or as a juvenile. Juvenile court jurisdiction in this state can be waived only after a hearing at which the juvenile court determines that there is prosecutive merit and that the criteria for waiver have been met. Sec. 48.18(4) and (5), Stats. 1979–80. In Wisconsin, the decision not to contest a district attorney's petition for waiver should not be tantamount to a decision to waive juvenile court juris-

diction. Rather, the decision not to contest waiver is akin to the decisions in a criminal trial which courts have generally viewed as tactical decisions to be made by the lawyer: the decisions not to cross-examine witnesses, not to challenge evidence, and not to present evidence. *See* 1 ABA Standards for Criminal Justice, The Defense Function, sec. 4–5.2 (2d ed. 1980); IJA-ABA Juvenile Justice Standards, Standards Relating to Pretrial Court Proceedings, sec. 6.2 (1980).

We are not persuaded to hold in this case, as a matter of state or federal constitutional law, that the decision not to contest waiver must be made personally by the juvenile on the record. Nevertheless, we conclude that it would be preferable practice for the juvenile court at a waiver hearing to address the juvenile personally, as well as the juvenile's counsel, to assure itself, on the record, that counsel has advised the juvenile fully of the opportunity to contest the waiver petition and of the consequences of the juvenile court's determination of waiver of jurisdiction; that counsel has inquired into the juvenile's understanding of the decision not to contest waiver and is satisfied that the juvenile understands and concurs in the decision; and that the juvenile knowingly and voluntarily concurs in the decision not to contest the waiver. This practice will serve to assure the juvenile court and reviewing courts that the waiver hearing was conducted with the utmost regard for protecting the juvenile's right to have the matter treated within the juvenile, rather than criminal, justice system.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the juvenile court.

BEILFUSS, C.J., took no part.